IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

BRUCE D. CRUISE,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration,

        Defendant.

Case No. 6:11-CV-06199-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Bruce D. Cruise ("Cruise"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-33. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3). For the reasons set forth below, the Commissioner's decision should be affirmed and this case should be dismissed.

## ADMINISIRATIVE HISTORY

Cruise protectively filed for SSI on June 24, 2008, alleging a disability onset date of January 31, 2006. Tr. 122-24.[1] After his application was denied both initially and on reconsideration, Cruise requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 84-97. On January 13, 2010, ALJ James Yellowtail held a hearing and received testimony from Cruise (who was represented by counsel), Mark A. McGowan, a vocational expert ("VE"), and Cruise's mother, Frances Rieke. Tr. 33-83. The ALJ issued a decision on January 28, 2010, finding Cruise not disabled. Tr. 19-29. On May 25, 2011, the Appeals Council denied Cruise's request for review, making ALJ Yellowtail's decision the Commissioner's final decision. Tr. 1-3; 20 C.F.R. § 416.1481.

## BACKGROUND

Cruise was born in 1956. Tr. 40, 122. He completed high school and two years of college. Tr. 40, 133. Cruise has past relevant work as a mechanic and sausage maker. Tr. 67-70, 130. Cruise alleges that he became unable to work on January 31, 2006, due to knee and back pain and being "misunderstood." Tr. 43-44, 129.

## DISABILITY ANALYSIS

In construing an initial disability determination, the Commissioner engages in a sequential process encompassing between one and five steps. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

---

[1] Citations are to the page(s) indicated in the official transcript of record filed on October 24, 2011 (docket #12).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). Absent a severe impairment, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id.* If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 416.966.

///

///

3 - FINDINGS AND RECOMMENDATION

## ALJ'S FINDINGS

At step one, the ALJ found that Cruise has not engaged in any substantial gainful activity since the alleged onset date of his disability, January 31, 2006. Tr. 21. At step two, the ALJ determined that Cruise suffers from the severe impairments of "degenerative disc disease of the thoracic and lumbar spine, degenerative joint disease of the right knee, personality disorder NOS with schizotypal features and substance abuse, in remission." *Id*. At step three, the ALJ found that Cruise's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 22.

Because Cruise did not establish disability at step three, the ALJ continued to evaluate how his impairments affected his ability to work. The ALJ resolved that Cruise had the RFC to: lift 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for six hours in an eight hour workday; frequently balance; occasionally climb stairs and ramps; and occasionally stoop, kneel, crouch, and crawl. Tr. 23. In addition, Cruise was limited to "unskilled work consisting of simple, routine tasks with simple instructions" and "no contact with the general public, and occasional contact with co-workers and supervisors." *Id.*

At step four, the ALJ found that Cruise is unable to perform any of his past relevant work. Tr. 27. Based on the testimony of the VE, the ALJ determined that Cruise could perform other work that exists in significant numbers in the national economy, such as office helper, security guard, and meter reader. Tr. 28. Accordingly, the ALJ concluded that Cruise was not disabled at any time between January 31, 2006, and the date of the decision on January 28, 2010. Tr. 29.

///

///

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*. (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Lingenfelter*, 504 F.3d at 1035; *Batson*, 359 F.3d at 1193.

**FINDINGS**

Cruise alleges that the ALJ erred by: (1) discrediting his subjective symptom testimony; (2) rejecting the opinion of a treating physician; (3) failing to account for all of his impairments in the RFC assessment; and (4) misapplying the Medical-Vocational Guidelines ("Grids") to determine that he was not disabled at step five.

**I.    Credibility**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient. The ALJ "must state which [subjective symptom]

testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Cruise argues that the ALJ improperly evaluated his subjective symptom testimony by putting the cart before the horse and finding his statements not credible to the extent they conflicted with the RFC.[2] Cruise is correct that "an ALJ may not simply define an RFC and then, without more, conclude the claimant's testimony is only credible to the extent it aligns with the RFC. However, '[t]here is nothing wrong with an ALJ stating a conclusion and then explaining it, as opposed to providing [an] explanation and then reaching a conclusion.'" *Bostic v. Astrue*, No. 3:10-cv-1153-HU, 2012 WL 786909, at *1 (D. Or. Mar. 9, 2012) (citing *Black v. Astrue,* No. 3:10-cv-06409-MO, 2011 WL 6130534, at *6 (D. Or. Dec. 7, 2011)). In other words, the ALJ does not err simply by noting that a claimant's testimony is not credible to the extent it is inconsistent with the RFC where that conclusion is followed by sufficient reasoning.

After rejecting Cruise's statements to the extent they were inconsistent with the RFC, the ALJ went on to explain that Cruise's testimony was belied by his activities of daily living, including the ability to perform manual labor jobs after the alleged onset date, failure to seek medical treatment, and inconsistent statements to medical providers. Tr. 24-25. Cruise does not

---

[2] In support Cruise cites *Carlson v. Astrue*, 682 F. Supp.2d 1156, 1167 (D. Or. 2010). However, he ignores the subsequent explanation in *Hodgson v. Astrue*, No. 3:10-cv-6261-ST, 2011 WL 4852307, at *7-8 (Sept. 14, 2011), adopted, 2011 WL 4809819 (D. Or. Oct. 11, 2011), that the ALJ's statement, while "admittedly confusing and not as clear as it should be," does not necessarily mean that the ALJ is relying only upon his own RFC assessment to determine credibility.

challenge any of these reasons. Accordingly, he fails to demonstrate that the ALJ's credibility finding was erroneous. Nonetheless, the Court will examine whether the ALJ's credibility determination is otherwise free of legal error and supported by substantial evidence.

In discussing the medical record, the ALJ noted that "[t]here is no evidence that the claimant has had much treatment for his back pain or right knee, and no evidence that he takes prescription medication for back or knee pain." Tr. 24. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's subjective statements. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). The record supports the ALJ's conclusion. Cruise's medical record is scarce. He only sought medical treatment for two transient physical ailments: a blood clot in his leg and an abscess on his finger. Tr. 198-206, 218-25. He did not receive any treatment for his back or knee pain until August 20, 2008, when he underwent an orthopedic examination by Todd Lewis, M.D., at the behest of the Oregon Department of Human Services. Tr. 235-38. As the ALJ noted, "Dr. Lewis opined that the claimant's upper lumbar degeneration 'should not be causing a great degree of disability.'" Tr. 24 (citing Tr. 237). Moreover, Cruise did not seek any treatment for his allegedly disabling mental impairment until October 8, 2008, at Linn County Mental Health Services. Tr. 282. However, "he was not really interested in [treatment] for clinical reasons, but for getting SSD/I only by being told by his lawyer to get a diagnosis." Tr. 308. This failure to seek treatment contravenes Cruise's statements regarding the severity of his symptoms. *See* Tr. 43-44.

In addition, the ALJ found that Cruise's testimony regarding his daily activities suggests a level of functioning greater than what was alleged. Tr. 24-25. Inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms, can serve as a

basis for a negative credibility finding. *See Burch*, 400 F.3d at 680-81; *Smolen*, 80 F.3d at 1284 n.7. Cruise testified that he dresses and grooms himself daily and is able to complete household chores such as cooking, cleaning, washing dishes, doing laundry, vacuuming, taking out the trash, and grocery shopping. Tr. 51, 148-50. In addition, Cruise stated that he goes outside and to his sister's house daily, drives, attends church every Sunday, could navigate the public transportation system if necessary, has looked for work, and is capable of following simple written instructions with minimal supervision. Tr. 42-43, 51-52, 150-52.

After summarizing this testimony, the ALJ remarked that Cruise's "physical impairments should not preclude gainful work." Tr. 25. Specifically, the ALJ found that this testimony belied Cruise's statement that constant back pain prevented him from walking, standing, sitting, kneeling, and bending. Tr. 24. For example, Cruise testified at the hearing that he could only stand for 20 minutes at a time, yet he also reported the ability to be "up and active" for two hours before needing to rest. Tr. 48, 156. In sum, because Cruise's level of activity is inconsistent with his alleged degree of impairment, the ALJ found Cruise's testimony about the severity of his limitations not credible.

Thus, the ALJ provided two clear and convincing reasons, supported by substantial evidence, to reject Cruise's testimony regarding the extent of his limitations. Accordingly, this Court need not discuss the other reasons provided. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Therefore, the ALJ's credibility finding should be affirmed.

## II. Medical Opinion Evidence

Cruise asserts that the ALJ failed to provide a clear and convincing reason to reject the opinion of Robert Vandiver, M.D., and Nurse Practitioner Janet Eggers. In December 2008,

8 - FINDINGS AND RECOMMENDATION

when Cruise initiated mental health counseling with Ms. Eggers for delusional disorder, he was not on any medication. Tr. 303. Thereafter, Cruise saw Ms. Eggers every four to six weeks when he received refills of Klonopin (benzodiazepine) and Invega (anti-psychotic).[3] Tr. 303-05, 319-34. On July 28, 2009, Ms. Eggers completed a "Mental Residual Functional Capacity Assessment." Tr. 292-95. In this assessment, Ms. Eggers reported that Cruise was diagnosed as a paranoid schizophrenic and was moderately to severely impaired in a number of work-related areas, such as the ability to "maintain attention and concentration for extended periods" and the ability to work "in coordination with or proximity to others without being distracted by them." Tr. 293-95. On July 30, Dr. Vandiver added his signature to the bottom of Ms. Eggers's assessment. Tr. 295.

### A. Applicable Standard

As an initial matter, the parties dispute the level of deference given to this medical evidence. Social security cases involve two types of medical opinions: those from "acceptable" medical sources, such as treating, examining, or non-examining physicians, and those from "other" medical sources, such as nurse practitioners. 20 C.F.R. §§ 416.902, 416.913; *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Id.* However, the opinion of a nurse practitioner can be rejected for germane reasons. *Turner v. Astrue*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

---

[3] Cruise stopped taking Klonopin at some point prior to the hearing and began taking Invega on April 21, 2009. Tr. 44, 296.

Cruise argues that because Dr. Vandiver was a treating psychiatrist, clear and convincing reasons were required to reject the Mental RFC assessment. He also argues that Ms. Eggers constitutes an acceptable medical source because she was working under the supervision of Dr. Vandiver. Conversely, the Commissioner contends that the ALJ needed only to provide a germane reason to reject this assessment because Dr. Vandiver did not actually treat Cruise, such that the assessment is solely that of Ms. Eggers.[4] In the alternative, the Commissioner asserts that, even assuming that this evidence is construed as an opinion from an acceptable medical source, only specific and legitimate reasons were required to reject it because it was contradicted by the opinions of Joshua Boyd, Psy.D., and Douglas Smyth, Ph.D.

Cruise is correct that "[t]o the extent [a] nurse practitioner . . . was working closely with, and under the supervision of [a physician], her opinion is to be considered that of an 'acceptable medical source.'" *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996)). However, Ms. Eggers was not working in conjunction with a physician. Unlike *Gomez* and *Taylor*, there is no evidence that Ms. Eggers consulted with Dr. Vandiver regarding Cruise's treatment or was otherwise working as Dr. Vandiver's agent. *Id.*; *Gomez*, 74 F.3d at 971. Rather, the record reveals that Cruise received examinations, treatment, diagnoses, and medication solely from Ms. Eggers. *See* Tr. 303-05, 319-34. Further, these records do not refer to Dr. Vandiver or any other physician as treating Cruise. Ms. Eggers is listed as the only

---

[4] Cruise contends that the Commissioner's argument should be rejected as nothing more than highly improper post-hoc speculation. Cruise misconstrues the issue. The ALJ must explain "why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation and internal quotations omitted). However, the ALJ has no duty to specify whether the reasoning provided to reject such evidence is clear and convincing, specific and legitimate, or germane. Rather, whether the ALJ's reasoning is sufficient, which depends, in part, on the type of medical source providing the opinion, is a determination within the purview of this Court.

"provider" and "author" of each treatment note. Thus, on the record before it, Ms. Eggers appears to have been working alone and, therefore, is an "other" source.

In addition, even assuming that Dr. Vandiver reviewed the medical record prior to signing off on Ms. Eggers's assessment, the joint opinion, at most, constitutes that of a non-examining physician. However, the opinion of a consulting physician "cannot by itself constitute substantial evidence." *Lester*, 81 F.3d at 831. Accordingly, unlike with treating or examining physicians, the ALJ need only "reference . . . specific evidence in the medical record" in order to reject the opinion of a non-examining physician. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez*, 74 F.3d at 972; and *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

Moreover, the Commissioner is correct that the opinion of Dr. Vandiver and Ms. Eggers is contradicted by the reports from Drs. Smyth and Boyd. *Compare* Tr. 292-95 (Dr. Vandiver/Ms. Eggers), *with* 239-44 (Dr. Smyth), *and* 260-62 (Dr. Boyd). Regardless, because the ALJ ultimately provided at least one clear and convincing reason to reject Ms. Eggers's and Dr. Vandiver's opinion, the precise level of reasoning required to discredit this evidence is immaterial.

### B. Dr. Vandiver's and Ms. Eggers's Assessment

The ALJ rejected "Ms. Eggers' opinion [because it] is not consistent with the medical records that show the claimant has normal mental status examination results [or] with the claimant's ability to do some work after the alleged onset date, care for himself and live alone." Tr. 26-27. An ALJ may reject a treating or examining physician's opinion where that opinion is not supported by objective medical evidence. *See Batson*, 359 F.3d at 1195; *Bayliss*, 427 F.3d at 1216.

11 - FINDINGS AND RECOMMENDATION

The record supports the ALJ's determination that Cruise's mental status exams were unremarkable. For example, a "mini mental status" exam by Tayna Thompson, a social worker at Linn County Mental Health Services, revealed that Cruise "had no problems." Tr. 283. Dr. Smyth[5] performed a more extensive mental status exam on Cruise on August 28, 2008. Tr. 239-44. This exam indicated that Cruise "was well oriented for time, place, and person;" his cognition and interpersonal skills were "grossly intact;" his attention span was "average;" his "[s]hort and long term memory appeared to be intact;" his "[m]otivation was good; he demonstrated no unusual fatigue during the 90-minute evaluation session;" and "[t]here was no behavioral evidence of hallucinations, delusions, or compulsions." *Id.* The only irregularities noted were that Cruise's "ability to perform calculations was in the low average" and "his ability to verbalize abstractions was poor." Tr. 242. Based on this evaluation, as well as an interview with Cruise and "a report authored by the claimant's mother,"[6] Dr. Smyth opined that Cruise is "surely capable of work." Tr. 239, 258, 276. Because substantial evidence supports the ALJ's determination that Dr. Vandiver's and Ms. Eggers's report was not supported by objective clinical findings, the ALJ's rejection of this evidence should be affirmed.

Further, Cruise continued to perform sporadic manual labor and fairly extensive daily activities. Tr. 41, 51, 125, 148-50, 324. As the ALJ noted, this evidence contradicts Dr. Vandiver's and Ms. Eggers's determination that Cruise was unemployable in any capacity. Tr. 27. An ALJ may reject a treating or examining physician's opinion to the degree that it conflicts with the claimant's activities of daily living. *See Morgan v. Comm'r of the Soc. Sec.*

---

[5] The only objective clinical findings in the record from an acceptable medical source are from the mental status exam provided by Dr. Smyth to which the ALJ gave "great weight." Tr. 25-26.

[6] Dr. Smyth did not review any mental health records pursuant to his evaluation because no such records existed at that time. Cruise did not begin receiving treatment from Linn County Mental Health Services until approximately one month after his examination with Dr. Smyth. Tr. 239, 282.

12 - FINDINGS AND RECOMMENDATION

*Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Accordingly, to the extent that the ALJ discredited the report of Dr. Vandiver and Ms. Eggers because it was inconsistent with Cruise's daily activities, the ALJ's decision should be upheld.

### III.    RFC Assessment

Cruise argues that the ALJ's RFC neglected to account for all of his impairments, in particular: (1) his subjective symptom testimony; (2) the full extent of his mental impairment; and (3) the limitations described in the lay testimony. The RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184 (July 2, 1996); *see also Robbins*, 466 F.3d at 883. The ALJ's RFC must incorporate limitations found on the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

#### A.    Medication Side Effects

Cruise argues that the ALJ erred by failing to include restrictions for medication side effects in the RFC. The ALJ must consider any documented medication side effects and their related limitations in assessing a claimant's ability to work. *See* 20 C.F.R. § 416.929 (c)(3)(iv); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). However, a claimant must present objective evidence of the alleged side effects and cannot rely on subjective allegations alone. *See Thomas*, 278 F.3d at 960.

The ALJ did consider Cruise's testimony regarding the side effects from his medication. Tr. 24. Moreover, beyond his own testimony, Cruise provided no objective evidence that he suffers from any side effects. The limited medical evidence in the record runs contrary to Cruise's assertion. It was not until two months prior to the hearing that Cruise first mentioned to

13 - FINDINGS AND RECOMMENDATION

Ms. Eggers that he was experiencing any side effects from the prescribed medications. Tr. 320, 322. Given the absence of objective evidence and the proper discrediting of Cruise's testimony, the ALJ did not err by not including a restriction for this alleged limitation in the RFC. *See Thomas*, 278 F.3d at 960; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (an ALJ need not incorporate limitations into the RFC based on a claimant's subjective testimony where that testimony has been properly discredited).

Further, Cruise does not detail what restrictions flow from these alleged side effects. Even Cruise's hearing testimony regarding medication side-effects is equivocal. When the ALJ asked Cruise whether Invega helped him, Cruise responded in the affirmative, stating that that it helped by making him feel "sleepy" and "relax[ed]." Tr. 46-47. In any event, the burden of establishing that an error is harmful "falls on the party attacking an administrative agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). This burden applies to Social Security cases. *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). Yet Cruise wholly neglected to address how the ALJ's error in assessing his alleged medication side effects was harmful.

Without more, Cruise cannot establish that these alleged side effects significantly limited his ability to do basic work activities such that a restriction should have been reflected in his RFC assessment.

### B.     Mental Impairment

Cruise asserts that the ALJ's restriction to "unskilled work consisting of simple, routine tasks with simple instructions" fails to account for his moderate limitation in concentration, persistence, and pace. As a preliminary matter, the term "moderate" does not necessarily

indicate a degree of limitation that must be expressly reflected in the RFC assessment. *See, e.g.*, *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007).

Moreover, an RFC to perform simple, repetitive tasks can be sufficient to accommodate a claimant's moderate limitations in concentration, persistence, and pace. *Stubbs-Danielson*, 539 F.3d at 1173-74 (the adequacy of the limitation "related to concentration, persistence, or pace [turns on whether the ALJ's assessment] is consistent with the restrictions identified in the medical testimony"); *see also Sabin v. Astrue*, 337 Fed.Appx. 617, 620-21 (9th Cir. 2009) (ALJ did not err in determining that, despite moderate difficulties in concentration, persistence, or pace, claimant could perform "simple and repetitive tasks on a consistent basis").

In this case, the medical opinions and other evidence support a finding that Cruise is capable of simple, routine, unskilled tasks, despite any moderate limitations in his concentration, persistence or pace. Cruise testified at the hearing that he was capable of following simple written instructions and asking for clarification if needed. Tr. 42, 52. In addition, Dr. Smyth opined that Cruise's cognitive abilities were intact. Tr. 242-43. Dr. Smyth further opined that while Cruise is not disabled, he should "likely be limited to routine tasks." Tr. 276. Dr. Boyd, a consulting source, determined that Cruise was moderately impaired in this area, yet nonetheless concluded that he was "capable of remembering/recalling both simple and complex information [and of] sustaining attention carrying out simple 1-3 step routine tasks." Tr. 262. Another consulting source, Sandra L. Lundblad, Psy.D., also opined that Cruise was capable of performing simple, repetitive tasks. Tr. 286. The ALJ gave full weight the opinions of Drs. Smyth, Boyd, and Lundblad, a finding that Cruise does not now challenge, and expressly incorporated their limitations into the dispositive hypothetical question posed to the VE. Tr. 25-26, 74.

Because the RFC must only reflect a limitation that is supported by substantial evidence, and because the record demonstrates that Cruise was capable of "unskilled work consisting of simple, routine tasks with simple instructions," the ALJ's RFC adequately accounted for his moderate impairment in concentration, persistence, or pace. Therefore, the ALJ's RFC assessment should be affirmed in this regard.

### C.    Lay Testimony

Cruise asserts that, despite giving significant weight to the lay testimony of Ms. Rieke, the ALJ failed to incorporate all of the limitations to which she testified. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). The ALJ must provide reasons germane to each witness in order to discount competent lay testimony. *Id.*; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

At the hearing, Ms. Rieke testified that Cruise is "slow and not real energetic" and needs "constant supervision." Tr. 56. She gave the example of Cruise weeding her flower bed, explaining that "if I don't watch him, he'll take out the weeds and the flowers. He's not real careful about what he does." Tr. 56-57. Ms. Rieke also stated that Cruise "has a hard time concentrating," is preoccupied with God and religion, and does not socialize much outside of with her, his sister, one female friend, and going to church. Tr. 58-59.

After accurately summarizing Ms. Rieke's testimony, the ALJ found that her "observations are consistent with the medical record that does show the claimant has a preoccupation with religion, and are also consistent with the opinions of mental health professionals that opine the claimant should be limited to simple, routine tasks." Tr. 27. Beyond

16 - FINDINGS AND RECOMMENDATION

this statement, however, the ALJ did not expressly reject or credit Ms. Rieke's testimony, but instead gave it "significant consideration." *Id.*

As such, to the extent that the ALJ rejected the lay testimony, he failed to provide a germane reason for doing so. However, such an error was harmless in this case. An ALJ's failure to provide a legally sufficient reason to reject lay testimony is harmless where the third-party statements are contradicted by "more reliable medical evidence that the ALJ credited." *Molina*, 674 F.3d at 1118-19. As discussed above, with the exception of Dr. Vandiver and Ms. Eggers, every medical source opined that Cruise was capable of "unskilled work consisting of simple, routine tasks with simple instructions." Tr. 23. Further, these medical sources also opined that, while Cruise was not disabled, he should be limited to "no contact with the general public, and occasional contact with co-workers and supervisors." *Id.*; *see also* Tr. 258 ("Dr. Smyth strongly believes [Cruise] is capable of being employed, but suggested that he not work closely w/others"), 262 (Dr. Boyd opined that Cruise "would be capable of very short/infrequent contact with the general public/coworkers [but] should not work in close proximity to others"), 286 (Dr. Lundblad reported that Cruise "can reasonably be restricted to . . . minimal public/coworker contact"). Therefore, the ALJ's RFC should be affirmed.

## IV.    Step Five Findings

Finally, Cruise argues that his nonexertional limitations precluded the application of the Grids. Accordingly, the ALJ erred at step five by applying the Grids to determine that he was not disabled.

The Commissioner can meet his burden at step five by either applying the Grids or taking the testimony of a VE. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The Grids consist of a matrix of combinations relating to the four vocational factors used in a disability

case: age, work experience, education, and physical ability. *Tackett*, 180 F.3d at 1101. The Grids may be applied, even in the presence of nonexertional limitations, as long as those limitations are not significant. *Id.* at 1102. Conversely, the Grids "are inapplicable when a claimant's nonexertional limitations are 'sufficiently severe' as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai*, 499 F.3d at 1075, quoting *Burkhart,* 856 F.2d at 1340. In such instances, the Commissioner must take the testimony of a VE and identify specific jobs that the claimant can perform despite his limitations. *Burkhart*, 856 F.2d at 1340.

At the hearing a VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT").[7] Tr. 64, 82. Based on Cruise's RFC, age, education, and work experience, the VE stated that Cruise could perform a significant number of jobs in the national and local economy, such as office helper, security guard, and meter reader. Tr. 75-76. The ALJ explicitly discussed the VE's testimony at step five and noted all three jobs identified by the VE by name, incidence, and DOT code. Tr. 28. Thus, the ALJ did not, in fact, rely on the Grids in finding that plaintiff was not disabled. While perhaps conflating the analysis regarding the Grids and the VE, the ALJ based his final step five determination on the VE's testimony.

Cruise also contends that since 200 occupations are contemplated by the sedentary Grids, the ALJ erred by only identifying three occupations that he could perform. However, under no circumstances must the ALJ identify 200 occupations that a claimant can perform. Where, as here, the ALJ relies on the testimony of a VE in making his step five finding, the issue is whether a significant number of jobs, as opposed to discrete occupations, have been identified. *See* 20 C.F.R. §§ 416.960(c), 416.966; SSR 83-14, 1983 WL 31254 (Feb. 26, 1979). Between 1,000

---

[7] The VE did identify one discrepancy with the DOT. Tr. 75-76. As the ALJ correctly determined, the VE adequately explained this discrepancy. Tr. 28. Cruise does not challenge the VE's testimony or the ALJ's step five finding on this basis.

and 1,500 jobs in the regional economy constitutes a significant number for purposes of the SSA. *Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (citing *Barker v. Sec'y of Health & Human Servs.,* 882 F.2d 1474, 1479 (9th Cir. 1989)).  Here, the ALJ identified 3,350 jobs in the local economy that Cruise could perform.  Tr. 28.

Because the VE identified a significant number of jobs that exist in the national and local economy that Cruise could perform despite his limitations, and because those jobs were consistent with the DOT, the ALJ's step five finding should be affirmed.  *See* 20 C.F.R. § 416.966.

## RECOMMENDATION

For the reasons stated above, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due October 15, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 28th day of September, 2012.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge